# In the United States Court of Federal Claims

No. 20-1602C
Filed under seal: March 24, 2021
Reissued: April 8, 2021 *

**OBSIDIAN SOLUTIONS GROUP, LLC,**

        *Plaintiff,*

**v.**

**UNITED STATES,**

        *Defendant.*

*Milton Christopher Johns*, Executive Law Partners, PLLC, Fairfax, VA, for the plaintiff.

*Steven Charles Hough*, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., for the defendant; *Sabrina C. Daly*, Small Business Administration, and *Brighton Springer*, Department of Energy, of counsel.

## MEMORANDUM OPINION

***HERTLING*, Judge**

The plaintiff, Obsidian Solutions Group, LLC ("Obsidian"), submitted a bid and was the presumptive awardee of a contract with the Department of Energy ("DOE") set aside for a small business for technical and communications security.  The defendant, the United States, acting through the Small Business Administration ("SBA"), determined that Obsidian was not a small business for the purposes of the DOE procurement because its average annual receipts exceeded $20.5 million, the maximum qualifying size to be considered a small business for the procurement.

Obsidian filed this bid protest disputing the SBA's calculation of its average annual receipts, alleging that the SBA decision was premised on an incorrect application of the Small Business Runway Extension Act of 2018, Pub. L. No. 115-324, 132 Stat. 4444 ("REA").  The

---

   * Pursuant to the protective order in this case, the Court initially filed this opinion under seal on March 24, 2021, for the parties to propose redactions of confidential or proprietary information.  The parties were directed to propose redactions by April 7, 2021.  The parties did not propose any redactions.  The Court hereby releases publicly the memorandum opinion of March 24 in full.

REA amended the Small Business Act to obligate agencies to use a period of no less than five years, instead of the statute's prior standard of three years, to average a business concern's receipts in order to determine if it qualifies as a small business.  Obsidian alleges that had the SBA averaged its annual receipts on a five-year basis, as required by the REA, it would have been eligible for the award.  The SBA, however, used a three-year basis, rendering Obsidian ineligible for the DOE procurement.

The plaintiff challenges the decision of the SBA Office of Hearings and Appeals ("OHA") upholding the SBA Area Office's size determination.  Obsidian argues that the SBA failed to abide by the five-year average set forth in the REA.  The defendant counters that the REA's new methodology for making size determinations neither took effect immediately upon enactment of the REA nor applied to the SBA, but rather set guidelines for the promulgation by federal agencies other than the SBA of new size-standard regulations.

The parties have cross-moved for judgment on the administrative record pursuant to Rule 52.1 of the Rules of the Court of Federal Claims ("RCFC").  The Court grants the defendant's motion for judgment on the administrative record and denies the plaintiff's cross-motion.

## I.      BACKGROUND

### A.      Statutory and Regulatory Framework

#### 1.      SBA Size Standards

The SBA, created by the Small Business Act of 1953, 15 U.S.C. §§ 631-57, seeks to "aid, counsel, assist, and protect, insofar as is possible, the interests of small-business concerns in order to preserve free competitive enterprise . . . ."  15 U.S.C. § 631(a).  The Small Business Act authorizes the SBA Administrator to define whether a business entity is small; the SBA may "specify detailed definitions or standards by which a business concern may be determined to be a small business concern for the purpose of this chapter or any other Act."  15 U.S.C. § 632(a)(2)(A).  These definitions and standards, termed "size standards," represent the largest size that a concern can be and still qualify as a small business for purposes of federal-government programs.  *See* 13 C.F.R. § 121.101.

Pursuant to its authority under 15 U.S.C. § 632(a)(2)(A), the SBA has issued size-standard regulations.  The SBA promulgates size standards for small-business concerns by considering "number of employees, dollar volume of business, net worth, net income, a combination thereof, or other appropriate factors."  15 U.S.C. § 632(a)(2)(B).  Typically, size standards are expressed by either annual receipts or number of employees.  *See* 13 C.F.R. § 121.201.  Size standards are established for different types of economic activities and industries under the North American Industry Classification System ("NAICS").  13 C.F.R. § 121.101(a).

Federal agencies seeking to promulgate regulations related to small businesses "usually use SBA size criteria." 13 C.F.R. § 121.903(a).  Federal agencies may, however, set their own

size standards.  "In limited circumstances, if they decide the SBA size standard is not suitable for their programs, then agency heads may establish a more appropriate small business definition for the exclusive use in such programs . . . ."  *Id.*

When a federal agency sets its own size standards pursuant to the authority of 13 C.F.R. § 121.903(a), it must satisfy a separate set of statutory requirements.  An agency cannot prescribe its own size standards unless the standards (1) are "proposed after an opportunity for public notice and comment," (2) satisfy the specific criteria established by Congress for determining size, and (3) are "approved by the [SBA] Administrator."  15 U.S.C. § 632(a)(2)(C).

### 2.      Runway Extension Act

The Small Business Runway Extension Act of 2018, Pub. L. No. 115-324, 132 Stat. 4444, was signed into law on December 17, 2018.  The REA made a single change to the Small Business Act.  Prior to the REA's passage, 15 U.S.C. § 632(a)(2)(C) provided that:

> Unless specifically authorized by statute, no Federal department or agency may prescribe a size standard for categorizing a business concern as a small business concern, unless such proposed size standard--
>
> (i) is proposed after an opportunity for public notice and comment;
>
> (ii) provides for determining--
>
>> (I) the size of a manufacturing concern as measured by the manufacturing concern's average employment based upon employment during each of the manufacturing concern's pay periods for the preceding 12 months;
>>
>> (II) the size of a business concern providing services on the basis of the annual average gross receipts of the business concern *over a period of not less than 3 years*;
>>
>> (III) the size of other business concerns on the basis of data over a period of not less than 3 years; or
>>
>> (IV) other appropriate factors; and
>
> (iii) is approved by the Administrator.

15 U.S.C. § 632(a)(2)(C) (2018) (emphasis added).  Section 632 of title 15 is commonly referred to as "section 3" of the Small Business Act.

Section 2 of the REA provides in full: "Section 3(a)(2)(C)(ii)(II) of the Small Business Act (15 U.S.C. 632(a)(2)(C)(ii)(II)) is amended by striking '3 years' and inserting '5 years.'" Pub. L. No. 115-324, 132 Stat. 4444.  The REA therefore increased the minimum number of years of annual receipts that must be averaged in calculating the size of any business when a

federal agency prescribes a size standard.  Section 3(a)(2)(C)(ii)(II) now provides the new five-year minimum:

> (II) the size of a business concern providing services on the basis of the annual average gross receipts of the business concern *over a period of not less than 5 years*."

15 U.S.C. § 632(a)(2)(C)(ii)(II) (emphasis added).

### 3.      SBA Rule

On June 24, 2019, the SBA proposed a new rule to reflect the statutory change made by the REA: "Small Business Size Standards: Calculation of Annual Average Receipts."  84 Fed. Reg. 29,399 (June 24, 2019).  The SBA "propose[d] to change its regulations on the calculation of annual average receipts for all receipts-based SBA size standards and other agencies' proposed size standards . . . from a 3-year averaging period to a 5-year averaging period." *Id*. The notice expressed the SBA's position that the "SBA has long interpreted section 3(a)(2)(C) of the Small Business Act as not applying to SBA's size standards issued under section 3(a)(2)(A)." *Id*.  Despite its long-standing interpretation that section 3(a)(2)(C) did not apply to it, the SBA determined that "to promote consistency government-wide on small business size standards," it would "change its own size standards to provide for a 5-year averaging period for calculating annual average receipts for all receipts-based size standards." *Id*. at 29,400.  The SBA explained that its "proposed rule only would affect the application of SBA's size standard rules after the effective date of a final rule." *Id*. at 29,401.  Until that time, the SBA would continue to apply the 3-year averaging period. *Id*.

On December 5, 2019, after the comment period, the SBA issued a final rule to implement the five-year averaging period "for all of SBA's receipts-based size standards, and for other agencies' proposed receipts-based size standards."  84 Fed. Reg. 66,561, 66,561 (Dec. 5, 2019).  The SBA reiterated that its new size standard would only apply after the rule's effective date. *Id*. at 66,568.  The new rule took effect on January 6, 2020. *Id*. at 66,561.

### B.      Obsidian's Size Determination

On April 19, 2019, after enactment of the REA, the National Energy Technology Laboratory, a DOE component, issued Solicitation 89243318RAU000002 for Technical Security, Communications Security, Cyber, Analysis and Security Administration ("TSCM"). (AR 141.[1])  The procurement was a "competitive 100% 8(a) small business set-aside." (AR 1050.)  The NAICS code associated with the contract was 561621 (Security Systems Services (except Locksmiths)) with a size standard of $20.5 million. (AR 1.)

---

[1] Citations to the administrative record (ECF 11, supplemented at ECF 14) are denoted as "AR" with the pagination reflected in that record.

On July 8, 2019, after the SBA had proposed to change its regulation governing size determinations, Obsidian submitted a timely proposal in response to the solicitation. (AR 578.) Obsidian, a technology- and management-consulting company providing technology-security services, submitted its proposal as a Service-Disabled Veteran-Owned Small Business (SDVOSB). (AR 578.) Obsidian's proposal indicated that it was a "SBA-certified 8(a) small business under NAICS code 561621." (AR 653.) In self-certifying as a small business eligible to bid on the contract—*i.e.*, that its averaged annual receipts totaled less than $20.5 million— Obsidian used a five-year average of its annual receipts. Obsidian calculated its five-year average as $17,471,947.00 and its three-year average as $21,751,616.00. (AR 1093.) The five-year average Obsidian used for its proposal met the $20.5 million maximum size standard for the solicitation.

On September 1, 2020, the SBA confirmed Obsidian's eligibility for award in a letter to the DOE, certifying that "[p]ursuant to Section 8(a) of the Small Business Act . . . OBSIDIAN SOLUTIONS GROUP LLC is eligible for award of the above solicitation." (AR 1087.) The following day, the DOE sent a pre-award notice letter to Obsidian confirming that Obsidian was "the apparent successful Offeror on the subject solicitation." (AR 1088.) The letter indicated that DOE would "submit a request to the SBA 8(a) [*sic*] for confirmation of eligibility and size status prior to making the award." (*Id.*) After sending Obsidian its pre-award notice, the DOE then contacted the SBA to request a business-size-standard determination. (AR 1089.)

On September 10, 2020, while the SBA proposed rule change was pending, the SBA Area II Office of Government Contracting ("Area Office") issued a formal size determination for Obsidian, finding that Obsidian was "other than small for the subject procurement." (AR 1090, 1093.) Obsidian had written to the Area Office via email explaining its submission:

> Obsidian Solutions Group has provided in a drop box as requested tax, financial records and OMB SBA Form 355 used to certify our firm as a small business under NAICS 561621. At the time of submission Obsidian Solutions Group was a small business (under $20.5M) in NAICS 561621. The SBA OMB Form 355 gives us an option to select for certifications prior to December 31, 2021 whether we select 3 year or 5 year. Obsidian Solutions group selected 5 year.

(AR 1094.) Obsidian argued that it had "submitted the SBA Form 355 per the instructions in the letter."[2] (*Id.*)

---

[2] SBA Form 355 was updated to reflect the proposed changes in SBA regulations following the passage of the REA. The Area Office included language in its emails to firms to alert them to potential confusion. The email message provided:

The Area Office determined that "[a]s the size standard for the instant solicitation is $20.5 million and the date of initial offer was prior to implementation of the Runway Extension Act, [Obsidian's] calculations indicate that [it] exceeded the applicable size standard on its date of initial offer." (*Id.*)

In making its determination, the Area Office relied on decisions by the OHA, which had determined in prior cases that the three-year calculation period continued to apply:

> [T]he Runway Extension Act amended only one sentence of the Small Business Act which pertains specifically to the promulgation of size standards. . . . Further, because the Runway Extension Act did not alter the requirements for notice-and-comment rulemaking and approval by the SBA Administrator, the Runway Extension Act can be implemented only by adhering to these requirements . . . . [The effective date of the new rules is] January 6, 2020, and SBA's commentary in the Federal Register makes clear that the three-year calculation period continues to apply to "any offer submitted prior to the effective date of the final rule."

(AR 1096 (quoting *Size Appeal of Diversified Protection Corporation*, SBA No. SIZ-6042 (2019)) (internal citation omitted).) The Area Office concluded that "based on the date of [Obsidian's] offer submission, July 18, 2019, which is prior to the January 6, 2020 effective date of the final rule, the Area Office cannot calculate [Obsidian's] average receipts on a five year basis rather than a three year basis." (*Id.*)

On September 25, 2020, Obsidian appealed the Area Office's size determination to the OHA. (AR 1111.) The OHA denied Obsidian's appeal on October 29, 2020. *Obsidian Sols. Grp., LLC*, SBA No. SIZ-6076, 2020 WL 6559714 (Oct. 29, 2020). The OHA reiterated that it had held on several prior occasions that the REA's "5-year period of measurement did not become effective immediately, but instead had to be implemented through regulation." *Id.* at *6. In these past decisions, the OHA found that the "'provision amended pertains specifically to the promulgation of size standards, not to the methodology used to calculate the size of a particular business.'" *Id.* (quoting *Size Appeal of Cypher Analytics, Inc. d/b/a Crown Point Systems*, SBA No. SIZ-6022 (2019)).

---

> SBA determines size as of the date the small business submits a written self-certification that it is small as part of its initial offer, which includes price. If this date is prior to January 6, 2020 you must use a 3-year average; if this date is after January 6, 2020 you may use a 3-year average or a 5-year average.

(AR 1094.) This information was included in an email to Obsidian on September 2, 2020. (*Id.*)

Obsidian filed this bid protest on November 14, 2020.  The protest challenges the OHA decision, seeking declaratory and injunctive relief because the SBA improperly deemed the plaintiff to be other than small in connection with DOE Solicitation No. 89243318RAU000002.

On December 28, 2020, the DOE made an award under a duplicate of the solicitation at issue to the next-successful offeror.  (ECF 13 at 7.)  The duplicate solicitation had a size standard of $22 million in average annual receipts.[3]  (*Id.*)  The DOE has voluntarily stayed contract performance, but not transition activities, until May 1, 2021.  (ECF 15 at 1.)

The parties have filed cross-motions for judgment on the administrative record and the motions have been fully briefed.  The Court heard oral argument on March 23, 2021.

## II.    JURISDICTION AND STANDARD OF REVIEW

The Court of Federal Claims has jurisdiction over bid protests pursuant to the Tucker Act, 28 U.S.C. § 1491(b), which confers on this court jurisdiction over actions "by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." *Id.* § 1491(b)(1).

The Tucker Act's waiver of sovereign immunity "covers a broad range of potential disputes arising during the course of the procurement process." *Sys. Application & Techs., Inc. v. United States*, 691 F.3d 1374, 1381 (Fed. Cir. 2012).  The Federal Circuit has held that challenges to decisions by SBA's OHA fall "within the scope of jurisdiction granted under the Tucker Act" because such challenges "are actions 'in connection with a proposed procurement.'" *Palladian Partners v. United States*, 783 F.3d 1243, 1254 (Fed. Cir. 2015) (quoting 28 U.S.C. § 1491 and citing *RLB Contracting, Inc. v. United States*, 118 Fed. Cl. 750, 756 (2014) ("Decisions of SBA's OHA are reviewable under [the Tucker Act's] grant of authority. . . .")).  The court reviews the OHA's determination, not any determination prefatory to it.  *See Palladian Partners*, 783 F.3d at 1255.

To invoke this court's jurisdiction, a plaintiff must establish standing by demonstrating that it is an "interested party." 28 U.S.C. § 1491(b)(1).  To do so, the plaintiff must "show that it is (1) an actual or prospective bidder, and (2) that it has a direct economic interest" in the procurement.  *CGI Federal Inc. v. United States*, 779 F.3d 1346, 1348 (Fed. Cir. 2015).  Obsidian bid on the solicitation and received a pre-award notice that it was the presumptive successful offeror.  (AR 578; 1088.)  The plaintiff was an actual bidder with a direct economic

_____

[3] The SBA increased the size standard for NAICS code 561621 from $20.5 million to $22 million effective August 19, 2019.  84 Fed. Reg. 34,261, 34,277 (July 18, 2019).  The contracting officer for the original solicitation did not amend the RFP to incorporate the $22 million size standard, leaving the $20.5 million standard to govern the solicitation at issue here.  *Obsidian Sols. Grp.*, 2020 WL 6559714, at *3 n.1.

interest in the solicitation, and therefore has standing to bring this protest. Accordingly, the Court has jurisdiction over this case.

On a motion for judgment on the administrative record pursuant to RCFC 52.1, the court limits its review to the administrative record before it and makes findings of fact as if it were conducting a trial on a paper record. *Bannum, Inc. v. United States*, 404 F.3d 1346, 1354 (Fed. Cir. 2005). Unlike a motion for summary judgment under RCFC 56, issues of material fact will not foreclose judgment on the administrative record. *Id.* at 1356. The court determines whether, "'given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record.'" *Integral Consulting Servs., Inc. v. United States*, 140 Fed. Cl. 653, 657 (2018) (quoting *A & D Fire Prot., Inc. v. United States*, 72 Fed. Cl. 126, 131 (2006)).

Just as in other bid protests, the court evaluates challenges to the OHA's decision affirming the Area Office's size determination under the Administrative Procedure Act ("APA") standard of review. *Paradigm Eng'rs & Constructors, PLLC v. United States*, 147 Fed. Cl. 487, 494 (2020). An agency procurement action may only be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A); *see* 28 U.S.C. § 1491(b)(4) (adopting the standard of 5 U.S.C. § 706(2)(A)). Relief may only be granted upon the finding that "the procurement official's decision lacked a rational basis." *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1338 (Fed. Cir. 2001).

The court's review of an agency's decision is "highly deferential." *Advanced Data Concepts v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000). "[S]pecial deference" is paid to decisions by the OHA due to the SBA's "'quasi-technical administrative expertise and . . . familiarity with the situation acquired by long experience with the intricacies inherent in a comprehensive regulatory scheme.'" *Eagle Design and Mgmt., Inc. v. United States*, 57 Fed. Cl. 271, 273 (2002) (quoting *Ceres Env't. Servs., Inc. v. United States*, 52 Fed. Cl. 23, 33 (2002) (citation omitted)).

When reviewing an agency's interpretation of an unambiguous statute, no deference is due, and the court reviews the agency's legal conclusion *de novo. See Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1320 (Fed. Cir. 2003), *reh'g and reh'g en banc denied*; *Mississippi Dept. of Rehab. Serv. v. United States*, 61 Fed. Cl. 20, 25 (2004) ("interpretation of statutes is a legal matter for courts to decide").

## III.   DISCUSSION

The plaintiff challenges the OHA's interpretation of the REA on three main grounds: (1) contrary to the SBA's position, section 3(a)(2)(C) of the Small Business Act, as amended by the REA, applies to the SBA, (2) the REA was effective immediately, requiring the SBA to average annual receipts on a five-year basis, and (3) no notice-and-comment rulemaking was required for the SBA to implement the REA. Because the question of whether the requirements of the REA apply to the SBA is central to determining both whether the SBA properly implemented the REA and whether it properly applied its regulations in evaluating the plaintiff's size, the Court turns first to this issue.

### A.        Applicability of Section 3(a)(2)(C) to the SBA[4]

Section 3(a)(2)(C) of the Small Business Act, as amended by the REA, provides that "[u]nless specifically authorized by statute, no Federal department or agency may prescribe a size standard for categorizing a business concern as a small business concern, unless such proposed size standard" meets three criteria. 15 U.S.C. § 632(a)(2)(C). Section 3(a)(2)(C)(ii) requires that a federal agency's size standard "provides for determining . . . the size of a business concern providing services on the basis of the annual average gross receipts of the business concern over a period of not less than 5 years." *Id*. § 632(a)(2)(C)(ii)(II).

The SBA has maintained for many years the position that section 3(a)(2)(C) applies only to federal agencies other than the SBA. As noted in the commentary accompanying the SBA's notice of its proposed regulations to reflect the statutory change made by the REA, the "SBA has long interpreted section 3(a)(2)(C) of the Small Business Act as not applying to SBA's size standards issued under section 3(a)(2)(A)." 84 Fed. Reg. at 29,399. The SBA has instead interpreted section 3(a)(2)(C) "as applying only to non-SBA agencies," an interpretation that, the SBA noted, it has repeated in the Federal Register 52 times. *Id*. at 29,400. Indeed, this longstanding position is one that the SBA has maintained for nearly 20 years. *Id*.

Obsidian challenges the SBA's longstanding interpretation of the non-applicability of section 3(a)(2)(C) of the Small Business Act to itself. Obsidian argues that the statutory phrase "no Federal department or agency" makes clear that section 3(a)(2)(C) applies to *all* federal agencies without limitation; there is no statutory carve-out for the SBA. As a result, Obsidian urges, the "SBA, a federal agency, may not issue or enforce a receipts-based size standard that uses anything less than a 5-year measurement period." (ECF 13 at 11.)

To assess the applicability of section 3(a)(2)(C) to the SBA, "[t]he first step 'is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.'" *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)). Interpretation of a statutory provision at issue cannot occur in a vacuum. A court has the "duty . . . 'to construe statutes, not isolated provisions.'" *King v. Burwell*, 576 U.S. 473, 486 (2015) (quoting *Graham County Soil and Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 290 (2010)). In reading a statutory provision, the Court must therefore "read the words 'in their context and with a view to their place in the overall statutory scheme.'" *Id*. (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000)).

The Court begins by considering section 3(a)(2) as a whole and evaluating the two provisions preceding subparagraph 3(a)(2)(C)—namely, subparagraphs (A) and (B). Section 3(a)(2) is entitled "Establishment of size standards." 15 U.S.C. § 632(a)(2). Subparagraph (A)

---

[4] The OHA did not render a determination or conclusion in its decision regarding the implications of the REA for the SBA's own size-standard regulations. *See Obsidian Sols. Grp.*, 2020 WL 6559714, at *5-7.

provides that "the [SBA] Administrator may specify detailed definitions or standards by which a business concern may be determined to be a small business concern for the purposes of this chapter or any other Act." *Id.* at § 632(a)(2)(A).  Subparagraph (B) clarifies that SBA size standards "may utilize number of employees, dollar volume of business, net worth, net income, a combination thereof, or other appropriate factors." *Id.* at § 632(a)(2)(B).

The defendant argues that section 3(a)(2) "provides the SBA with two distinct powers over prescribing small business size standards: subparagraphs (A) and (B) authorize size standards to be *established by the SBA*, and subparagraph (C) requires SBA approval of size standards *proposed by other agencies*." (ECF 18 at 13 (emphasis in original).)  Accordingly, the SBA issues its own size standards pursuant to subparagraphs (A) and (B) rather than subparagraph (C).  The plaintiff does not address in its briefing the structure or context of section 3(a)(2).

This court was recently presented with the opportunity to review the REA's applicability to the SBA in a similar appeal from an OHA size determination.  In *BTAS, Inc. v. United States*, No. 20-1176C, 2021 WL 280532 (Fed. Cl. Jan. 21, 2021), Chief Judge Kaplan held that "section 3(a)(2)(C)(ii)(II) of the Small Business Act does not apply to size standards that the SBA itself promulgates." *Id.* at *10.  Chief Judge Kaplan reasoned that the text and structure of section 3(a)(2) suggest that the SBA retains separate authority to establish its own size standards and approve other agencies' size standards.  For example, the paragraph immediately following section 3(a)(2) references back to it: section 3(a)(3) provides further instructions for "[w]hen *establishing or approving* any size standard pursuant to paragraph (2)." 15 U.S.C. § 632(a)(3) (emphasis added).  Section 3(a)(3)'s identification of establishing and approving size standards as two separate functions provides further proof of distinct roles for the SBA with separate statutory requirements for each function.

Chief Judge Kaplan also reasoned in *BTAS* that absent specific statutory authority, section 3(a)(2)(C) requires federal agencies' size standards to be "approved by the [SBA] Administrator." *BTAS*, 2021 WL 280532, at *8 (quoting 15 U.S.C. § 632(a)(2)(C)(iii)).  Such a requirement, as applied to a size standard issued by the SBA itself, "renders the separate approval requirement superfluous." *Id.* (citing *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (noting that statutes should be read to avoid rendering a clause, sentence, or word "superfluous, void, or insignificant")).

The defendant in this case presents a similar argument in pointing to the language of subparagraph (C), which discusses the means by which agencies other than the SBA may submit to the SBA a "*proposed* size standard" for approval by the SBA Administrator. (ECF 18 at 14 (citing 15 U.S.C. § 632(a)(2)(C)) (emphasis added)).  This process stands in contrast to the SBA's process for establishing its own size standards.  The SBA's process allows it to issue final size standards itself.  *See* 79 Fed. Reg. 33,647, 33,664 (June 12, 2014).  Because the SBA may issue final standards without following the proposal process of subparagraph (C), section 3(a)(2)(C)(ii)(II) cannot logically apply to the SBA.

The Court agrees with the defendant's reading of the statute and the analysis set forth by Chief Judge Kaplan in *BTAS*.  The specific authority identified in subparagraph (A) and the

10

criteria prescribed in subparagraph (B) of section 3(a)(2) of the Small Business Act provide the SBA with the authority to set size standards and guidelines for determining a business concern's size.  15 U.S.C. § 632(a)(2)(A)-(B).  Subparagraph (C), in contrast, refers to agencies that are not otherwise "specifically authorized by statute" to promulgate size standards—an authority that the SBA is specifically accorded in subparagraph (A).

Subparagraph (C) imposes additional requirements on federal agencies other than the SBA, including the requirement that they seek and obtain "approv[al] by the Administrator" of their own proposed size standards.  These additional requirements suggest that Congress imposed on the SBA authority to oversee agencies not otherwise statutorily vested with the authority to set size standards and provided a means of ensuring those size standards were in keeping with the goals of the SBA Administrator.  To apply the "separate approval requirement" to the SBA itself would, as Chief Judge Kaplan reasoned, render that requirement superfluous. *BTAS*, 2021 WL 280532, at \*8.

The Court recognizes that the SBA has long interpreted subparagraph (C) not to apply to its own size-standard regulations.  84 Fed. Reg at 29,400.  The SBA's position of nearly 20 years is one of which Congress was presumably aware in enacting the REA.  *See Forest Grove School Dist. v. T.A.*, 557 U.S. 230, 239-40 (2009) ("'Congress is presumed to be aware of an administrative . . . interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change.'") (quoting *Lorillard v. Pons*, 434 U.S. 575, 580 (1978)).  Because Congress amended the language of subparagraph (C) against the backdrop of the SBA's longtime interpretation that subparagraph (C) does not apply to the SBA's size standards, the Court must presume that Congress knew that amending subparagraph (C) would only apply to agencies other than the SBA and thus did not intend for the REA to apply to the SBA and its own size-standard regulations.

The Court finds that section 3(a)(2)(C) of the Small Business Act does not apply to the SBA's promulgation of size-standard regulations.  The SBA is not subject to section 3(a)(2)(C)(ii)(II) of the Small Business Act, which specifies the minimum number of years for calculating average annual receipts.[5]  Because the REA amended a provision of law

---

[5] The parties also dispute whether *Chevron* deference should apply to the SBA's interpretation of the Small Business Act, including the effective date of the REA amendment. *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984) (establishing that when a court reviews an agency's construction of a statute which it administers, the court must first ask "whether the intent of Congress is clear," and if not, whether the agency's interpretation is "based on a permissible construction of the statute").  Because the Court finds the statute clear and unambiguous on its face, there is no cause to defer to the SBA's interpretation of the statute.

The Court notes that if the statute were ambiguous, the Court "would be required to defer to the SBA's interpretation of section 3(a)(2)(C) because it is based on a 'permissible' and

inapplicable to the SBA, the change itself does not apply to the SBA.  The OHA's decision is therefore not inconsistent with the REA.

### B.       Effective Date of REA and Notice-and-Comment Rulemaking

Obsidian challenges two additional aspects of the OHA's determination.  First, the parties dispute whether the REA was effective on the date it was enacted, December 17, 2018— obligating the SBA to begin immediate use of a five-year average in calculating size standards— or only became effective after promulgation of appropriate regulations.  Second, in a challenge closely tied to its argument that the REA was immediately effective, Obsidian also argues that the SBA's new regulations setting a five-year period for averaging receipts did not require notice-and-comment rulemaking.

Because the Court has determined, as did Chief Judge Kaplan in *BTAS*, that the language of the statute is clear and unambiguous, and that the REA's amendment to the Small Business Act was inapplicable as a matter of law to the SBA, Obsidian's remaining arguments are unavailing and need not be addressed to resolve the plaintiff's claim.  The Court will note simply that similar arguments were presented by the plaintiff in *BTAS* and rejected.  *See BTAS*, 2021 WL 280532, at *10-12.  The Court does not reach those arguments here.

## IV.     CONCLUSION

The Court finds that the OHA did not act in an arbitrary or capricious manner in determining that Obsidian was other than small for the purpose of the DOE procurement.  The OHA was reasonable in finding that, in accordance with the SBA's longstanding interpretation, section 3(a)(2)(C)(ii)(II) of the Small Business Act does not apply to the SBA, and that the REA's amendment to that provision therefore also does not apply to the SBA.

The Court upholds the OHA's decision, which affirmed the SBA Area Office's finding that the plaintiff did not meet the size standard for the DOE procurement.  Because the plaintiff has not demonstrated success on the merits of this case, the Court must deny injunctive relief.

---

reasonable interpretation of the statute."  *BTAS*, 2021 WL 280532, at *10.  A court must defer to an agency's reasonable interpretation of a statute it is charged with administering, and the agency's interpretation controls unless it is found to be "arbitrary, capricious, or manifestly contrary to the statute."  *Chevron*, 467 U.S. at 844.  The SBA has long interpreted section 3(a)(2)(C) not to apply to the promulgation of its own size standards.  84 Fed. Reg. at 29,399.  Accordingly, were the statute ambiguous, the Court would find the SBA's construction of it to be reasonable and defer to that construction to conclude that the provision at issue does not apply to the SBA.

Accordingly, the Court grants the defendant's motion for judgment on the administrative record and denies the plaintiff's motion.

The Court will issue an order in accordance with this memorandum opinion.

s/ Richard A. Hertling
**Richard A. Hertling**
**Judge**