# In the United States Court of Federal Claims

No. 20-1602C
Filed under seal: April 27, 2021
Reissued: April 29, 2021[*]
NOT FOR PUBLICATION

---

**OBSIDIAN SOLUTIONS GROUP, LLC,**

       *Plaintiff,*

**v.**

**UNITED STATES,**

       *Defendant.*

---

*Milton Christopher Johns*, Executive Law Partners, PLLC, Fairfax, VA, for the plaintiff.

*Steven Charles Hough*, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., for the defendant; *Sabrina C. Daly*, Small Business Administration, and *Brighton Springer*, Department of Energy, of counsel.

## AMENDED MEMORANDUM OPINION AND ORDER

***HERTLING*, Judge**

The plaintiff, Obsidian Solutions Group, LLC ("Obsidian"), moves pursuant to Rule 62 of the Rules of the Court of Federal Claims ("RCFC") for a stay of the Court's judgment. The parties in this bid protest cross-moved for judgment on the administrative record, and the Court granted the defendant's motion and denied the plaintiff's motion in a memorandum opinion on March 24, 2021. The Court entered final judgment rejecting Obsidian's claim. Obsidian has filed a notice of appeal and now seeks to stay the effect of the Court's judgment. Obsidian's motion for a stay pending appeal is denied.

---

[*] The Court initially filed this opinion on April 22, 2021, denying the plaintiff's motion to stay the Court's judgment pending appeal. The Court amended and reissued the opinion under seal on April 27, 2021. The parties were directed to propose redactions of confidential or proprietary information by April 28, 2021. The parties did not propose any redactions. The Court hereby releases publicly the amended memorandum opinion and order of April 27 in full.

## I.      BACKGROUND

The facts are recounted in detail in the Court's opinion on the merits of this case, *Obsidian Sols. Grp., LLC v. United States*, No. 20-1602, 2021 WL 1309148 (Fed. Cl. Mar. 24, 2021).  Briefly, Obsidian submitted a bid and was the presumptive awardee of a Department of Energy ("DOE") contract set aside for a small business.  The defendant, the United States, acting through the Small Business Administration ("SBA"), determined that Obsidian was not a small business for the purposes of the DOE procurement because its average annual receipts exceeded $20.5 million, the maximum qualifying size to be considered a small business for the North American Industry Classification System (NAICS) Code applicable to the procurement.

Obsidian filed this bid protest disputing the SBA's calculation of its average annual receipts.  Obsidian alleged that the SBA decision was premised on an incorrect application of the Small Business Runway Extension Act of 2018, Pub. L. No. 115-324, 132 Stat. 4444 ("REA"), amending 15 U.S.C. § 632(a)(2)(C).  The REA amended this provision of the Small Business Act to obligate agencies to use a period of no less than five years, instead of the statute's prior standard of three years, to average a small business concern's receipts in order to determine its size.  Obsidian alleged that had the SBA averaged its annual receipts on a five-year basis, as required by the REA, it would have been eligible for the award.  The SBA, however, used a three-year basis, rendering Obsidian ineligible for the DOE procurement.

In its bid protest, Obsidian argued that the REA applies to the SBA and was effective immediately upon enactment, so that the SBA's delay in implementing the REA's statutory change was contrary to law.  The defendant replied that the REA's new methodology for making size determinations neither took effect immediately upon enactment of the REA nor applied to the SBA, but rather set guidelines for the promulgation by federal agencies other than the SBA of new size-standard regulations.

Notwithstanding the SBA's own interpretation that the change made by the REA did not apply to it, in the wake of the REA's enactment, the SBA proposed a new rule to reflect the statutory change made by the REA: "Small Business Size Standards: Calculation of Annual Average Receipts."  84 Fed. Reg. 29,399 (June 24, 2019).  The SBA "propose[d] to change its regulations on the calculation of annual average receipts for all receipts-based SBA size standards and other agencies' proposed size standards . . . from a 3-year averaging period to a 5-year averaging period."  *Id.*  The notice expressed the SBA's position that the "SBA has long interpreted [15 U.S.C. § 632(a)(2)(C)] as not applying to SBA's size standards issued under [15 U.S.C. § 632(a)(2)(A)]."  *Id.*  Despite its long-standing interpretation that the relevant statutory provision did not apply to it, the SBA determined that "to promote consistency government-wide on small business size standards," it would "change its own size standards to provide for a 5-year averaging period for calculating annual average receipts for all receipts-based size standards."  *Id.* at 29,400.  The SBA explained that its "proposed rule only would affect the application of SBA's size standard rules after the effective date of a final rule."  *Id.* at 29,401.  Until that time, the SBA would continue to apply the 3-year averaging period.  *Id.*

On December 5, 2019, after the comment-period, the SBA issued a final rule to implement the five-year averaging period "for all of SBA's receipts-based size standards, and for

other agencies' proposed receipts-based size standards." 84 Fed. Reg. 66,561, 66,561 (Dec. 5, 2019). The SBA reiterated that its new size standard would only apply after the rule's effective date. *Id.* at 66,568. The new rule took effect on January 6, 2020, *id.* at 66,561, after the date when Obsidian's size was calculated.

Obsidian challenged the SBA's determination that the REA did not apply to it and, as a result, the statutory change requiring consideration of the average of five instead of three years of a firm's receipts did not apply to the SBA immediately upon enactment of the REA. Specifically, Obsidian argued that, contrary to the SBA's position, 15 U.S.C. § 632(a)(2)(C), as amended by the REA, applies to the SBA; the REA was effective immediately, requiring the SBA to begin to average annual receipts on a five-year basis immediately upon the REA's enactment; and notice-and-comment rulemaking was not required for the SBA to implement the REA.

After briefing and oral argument, the Court determined that 15 U.S.C. § 632(a)(2)(C) does not apply to the SBA's promulgation of size-standard regulations. *Obsidian Sols. Grp.*, 2021 WL 1309148, at *9. Because the REA amended a provision of law inapplicable to the SBA, the change made by the REA does not apply to the SBA. As a result, the Court upheld the SBA's decision to find that Obsidian was other than small for purposes of the DOE procurement. Having found that the REA was not applicable to the SBA, the Court did not reach the other issues presented by Obsidian. The Court entered final judgment against Obsidian on March 24, 2021. On April 5, 2021, Obsidian filed a notice of appeal of the Court's judgment. On April 6, 2021, Obsidian filed this motion under RCFC 62.

## II.   RCFC 62

A final judgment in an action for an injunction is not subject to the automatic 30-day stay of execution afforded to other actions by RCFC 62(a). RCFC 62(c)(1); *Beard v. United States*, 101 Fed. Cl. 100, 102 (2011) (interpreting RCFC 62(a) to mean that there is "no automatic stay if an appeal is taken in an action for an injunction").

When a party appeals a final judgment in a case involving an injunction, that party may be afforded an opportunity under RCFC 62(d) for a further stay pending appeal:

> Injunction Pending an Appeal. While an appeal is pending from an interlocutory order or final judgment that grants, continues, modifies, refuses, dissolves, or refuses to dissolve or modify an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights.

RCFC 62(d).

The plaintiff in this bid protest invoked this court's jurisdiction under 28 U.S.C. § 1491(b), seeking in its complaint declaratory and injunctive relief. The defendant voluntarily stayed contract performance, but not transition activities, on the disputed procurement until May

1, 2021.  In responding to this motion, the defendant has explained that the awardee of the contract "is scheduled to begin full operational performance by no later than May 16, 2021." (ECF 37-1, Decl. of Marianne DiSomma, at 2.)  Obsidian requires an injunction from this Court to prevent the DOE from proceeding with the implementation of the contract award.  Obsidian was denied an injunction in the Court's March 24 memorandum opinion.  RCFC 62(d) is facially applicable to this case.

Under Rule 8(a)(1)(A) of the Federal Rules of Appellate Procedure ("FRAP"), an application for a stay pending appeal must first be filed in the trial court before the Court of Appeals may consider it.[1]

## III.   STANDARD OF REVIEW FOR A MOTION TO STAY PENDING APPEAL

In deciding whether the moving party has met its burden of showing that a stay pending appeal is appropriate, the court considers four factors: "(1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of a stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."  *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987) (citations omitted).  Because these "traditional stay factors contemplate individualized judgments in each case, the formula cannot be reduced to a set of rigid rules."  *Id.* at 777.

In considering whether a stay pending appeal should be granted, the Federal Circuit "assesses a movant's chances for success on appeal and weighs the equities as they affect the parties and the public."  *E.I. DuPont de Nemours & Co. v. Phillips Petroleum Co.*, 835 F.2d 277, 278 (Fed. Cir. 1987).

The Federal Circuit elaborated the governing test in *Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 897 F.2d 511 (Fed. Cir. 1990).  Under the test, which the court described as "effectively merg[ing]" the four factors outlined in *Hilton*, "each factor need not be given equal weight."  *Id.* at 512.  When the "harm to the applicant is great, a court will not require 'a strong showing' that applicant 'is likely to succeed on the merits.'"  *Id.* at 513 (quoting *Hilton*, 481 U.S. at 776).  The Federal Circuit explained its standard as a "'sliding scale approach.'"  *Id.* (quoting *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 387-88 (7th Cir. 1984)).  Under this approach, "'[t]he more likely the [applicant] is to win, the less heavily need the balance of harms weigh in [its] favor; the less likely [it] is to win, the more need it weigh in [its] favor.'"  *Id.* (quoting *Roland*, 749 F.2d at 387-88).

---

[1] Under the Rules of the Court of Appeals for the Federal Circuit, references in the Federal Rules of Appellate Procedure to district courts apply to the Court of Federal Claims.  Fed. Cir. R. 1(a)(1)(C).

## IV.    DISCUSSION

### A.    Success on the Merits

In evaluating a motion for a stay pending appeal, a court may vary the weight assigned to each of the four factors in reaching its overall conclusion, but each factor's persuasiveness is predicated on the likelihood of the moving party's success on the merits. Accordingly, the Court begins its analysis with that factor.

"[L]ikelihood of success in the appeal is not a rigid concept." *Id.* at 512. Obsidian argues that it is likely to prevail on its appeal. The Court does not agree. Of course, that lack of agreement is not surprising, given the Court ruled against Obsidian. Nonetheless, the Court does not view the case as close.

Obsidian's position is contrary to the SBA's consistent construction of almost 20 years of 15 U.S.C. § 632(a)(2). Both this Court in Obsidian's challenge and Chief Judge Kaplan in *BTAS, Inc. v. United States*, 152 Fed. Cl. 194 (2021), ruled against the plaintiffs challenging the SBA's interpretation of the statute. When 15 U.S.C. § 632(a)(2)(C) is read in the context of the statutory scheme in which it appears, no other meaning of the statute or the change to it made by the REA is consistent with the traditional canons of statutory construction.

Obsidian argues in its motion to stay that the REA's amendment to the statute took effect immediately upon enactment. (ECF 31 at 8-9.) The Court did not reach that argument because the question became moot once the Court held that the REA does not apply to the SBA. With respect to the issue on which the Court ruled against Obsidian, the only argument Obsidian now presents is a repetition in truncated form of its prior argument when the Court considered the merits. (*Id.* at 9-10.) Nowhere in its briefing on this motion does Obsidian grapple with the Court's opinion; it provides no analysis of a potential error by the Court and points to no aspect of its argument that the Court overlooked or misconstrued as would be necessary for Obsidian to prevail on the merits before the Federal Circuit. In effect, Obsidian simply reiterates the argument that both the court in *BTAS* and this Court rejected. A party seeking a stay must do more than simply claim the trial court got it wrong; it must present a good faith argument that substantial doubt exists over the trial court's decision.

On this record and faced with Obsidian's argument on this point, the Court finds that Obsidian has presented only the most meager prospect for the success on the merits of its appeal. As a result, the weight the other factors must bear grows in significance if they are to support Obsidian's motion for a stay.

### B.    Irreparable Harm to Obsidian

The second factor the Court considers is whether Obsidian will suffer irreparable harm if its motion is not granted.

Obsidian's burden of showing irreparable harm in this context is steep. Economic harm to the moving party, standing alone, will not satisfy that burden. *See Sierra Military Health Servs., Inc. v. United States*, 58 Fed. Cl. 573, 582 (2003). As this court held there: "'economic

loss does not, in and of itself, constitute irreparable harm.  Only economic loss that threatens the survival of a movant's business constitutes irreparable harm.'"  *Id*. (quoting *Found. Health Fed. Servs. v. United States*, 1993 WL 738426, at *3 (D.D.C. 1993) (internal quotes omitted)).  The Federal Circuit has similarly explained that irreparable harm supporting a stay pending appeal exists when the moving party can show harm such as "employee layoffs, immediate insolvency, and, possibly, extinction."  *Standard Havens*, 897 F.2d at 515.  As Judge Smith has recently summarized, "[i]n the context of a RCFC 62(d) Motion, this [c]ourt has previously held that 'loss of a contract is not enough without more to show irreparable harm or warrant a stay pending appeal.'"  *Harmonia Holdings Grp., LLC v. United States*, 147 Fed. Cl. 749, 754 (2020) (quoting *Algese 2 s.c.a.r.l. v. United States*, 128 Fed. Cl. 7, 12 (2016)).

To meet the governing standard, Obsidian has supplied the Court with no facts or evidence to support its assertion that it will suffer irreparable harm in the absence of a stay.  Instead, Obsidian provides only the unsupported assertions of its attorney in a memorandum of law.  This court has held that "[p]rotesters may not rely on attorney argument to establish irreparable injury."  *Chromalloy San Diego Corp. v. United States* 145 Fed. Cl. 708, 744 (2019).  Although *Chromalloy* did not involve a motion under RCFC 62(d), its holding as to the nature of evidence necessary to support a claim of irreparable harm applies with equal force to this context.

The Court has before it no facts on which to base an analysis that Obsidian may, or may not, suffer irreparable injury in the absence of a stay.  The absence of facts is fatal to Obsidian's argument that it will in fact suffer irreparable harm without a stay, especially given its heavy burden of showing something more than simple economic injury due to the loss of the contract.  Therefore, the Court finds that Obsidian has failed to show irreparable harm.

Even were the Court to consider argument of counsel in support of this factor, Obsidian's claim of irreparable injury falls far short of what is required to satisfy its burden of persuasion.  Obsidian argues that its "short and long term growth require[ ] planning."  (ECF 31 at 6.)  Obsidian depends on "deliberative growth."  (*Id*.)  Its ability to make appropriate decisions about future staffing and capital resources "depends on being able to predict" the outcome of this litigation.  (*Id*.)  Obsidian argues that it "needs to be able to make calculated decisions about allocations of its current resources, whether that is devoting resources to other current contracts or seeking new opportunities through the procurement process."  (*Id*.)

These assertions, taken either individually or together, would fall far short of demonstrating irreparable harm had they been made by an executive of Obsidian.  These facts speak to nothing beyond the normal uncertainties that any business confronts regularly.  Trying to forecast the outcome of litigation or dealing with litigation's fallout is also a regular part of any business executive's existence.  There is nothing about any business dealing with these routine uncertainties that rises to the level of irreparable harm.  For example, even if the Court were to grant the motion for a stay and Obsidian loses its appeal, its executives would be facing the same issues then that it asserts now constitute irreparable harm, except they would know they would not be making money from the contract at issue here.  That conclusion undercuts the claim that Obsidian will suffer irreparable harm in the absence of a stay.

The harms Obsidian asserts it will suffer fall well short of the types of harm this court and the Federal Circuit have explained are needed to satisfy a moving party's burden of showing irreparable harm. There is no claim that Obsidian's future survival is at risk, or that it will lay off employees. At best, Obsidian argues that it is inconvenient for its executives to have to make decisions in the absence of perfect knowledge.

Obsidian also asserts that "once awarded to a third party, the [c]ontract [at issue] will forever be lost to Obsidian." (*Id.*) That assertion is not correct. In the event Obsidian were to prevail on appeal, the award of the contract to another bidder could be vacated, and the contract ultimately awarded to Obsidian. The absence of revenue under the contract to Obsidian during the appeal does not itself constitute irreparable harm, because even were this Court to enter a stay, Obsidian would neither be performing the contract nor getting paid under it during the appeal.

Obsidian's failure to provide admissible facts in support of its claim of irreparable harm dooms that claim, but even if it had presented such facts, they would not have been sufficient to meet it burden.

## C.    Effect of a Stay on Other Parties

The third factor is the effect of a stay on the other parties to the litigation. Obsidian dismisses the harm to the defendant, arguing that it has a bridge contract in place and can continue to secure the services at issue in this procurement under a series of bridge contracts until the case is resolved. (*Id.* at 6-7.) The defendant responds that, in contrast to Obsidian's unsupported assertion, the hardship to it "would be substantial." (ECF 37 at 6.) Through the declaration of Marianne DiSomma, a responsible agency official (ECF 37-1), the defendant explains that the awardee "has begun hiring staff, transitioning equipment from the incumbent contractor, arranging logistics for vehicle leases, obtaining facility and personnel clearances, and conducting staff orientation in preparation for starting full operational performance by May 16, 2021." (ECF 37 at 6 (citing ECF 37-1 ¶ 4).)

The defendant explains that if the Court were to grant the stay pending appeal, the contract with the awardee would have to be terminated for convenience, causing delays and potentially placing the DOE "at risk of having insufficient qualified staff available to perform its mission-critical security functions." (ECF 37-1 ¶ 4.) In addition, the DOE estimates that the cancellation of the contract to the current awardee would impose costs of more than $1 million on the defendant. (*Id.* ¶ 6.)

The defendant also argues that if the Court stays its judgment pending appeal and the DOE cancels the current award, the DOE "likely would fail to successfully complete . . . mission-critical audits" related to its "operation of classified communications systems and development of nuclear weapons systems." (*Id.* ¶ 5.) The failure to complete successfully the required audits could "have catastrophic effects on DOE's ability to securely transmit classified communications and ripple effects on the security of nuclear facilities, special nuclear materials, and nuclear weapons components, and could potentially enable cyber-attacks by foreign countries." (*Id.*)

Congress has directed that "[i]n exercising jurisdiction under [28 U.S.C. § 1491(b)], the courts shall give due regard to the interests of national defense and national security. . . ." 28 U.S.C. § 1491(b)(3).  In applying this provision, this court has held that "[w]hen military and national security interests are implicated, the public interest factor gains inflated importance in the court's balancing of the equities." *Linc Gov't Servs. v. United States*, 96 Fed. Cl. 672, 702 (2010).

The defendant has explained with admissible evidence the concrete harms that could occur if the Court were to prevent the DOE from implementing the contract during the pendency of Obsidian's appeal.  The prospective harms implicate the nation's nuclear arsenal and communications systems that support the nuclear arsenal.  It is difficult to conceive of a more compelling national interest than the support of the nuclear arsenal.

The Court appreciates that the harm outlined by the defendant is only a possibility and not definite, and the plaintiff, during oral argument on its motion, suggested that the current contractor could provide the support necessary to permit the DOE to satisfy the audit requirements.  Nevertheless, the Court will defer to the professional judgment of the agency.  As the court in *Linc Gov't Services* explained, "the Supreme Court has underscored the 'great deference' that courts owe 'to the professional judgment of'" national security authorities in evaluating the potential harm to the public were an injunction or stay to be entered.  *Id*. (quoting *Winter v. NRDC*, 555 U.S. 7, 25 (2008)).

The Court is not equipped to evaluate the reality of the threat or harm posed to the DOE were it to stay its judgment.  The Court need not conclusively determine the precise national security interest at stake because Obsidian has failed to produce any evidence showing irreparable harm to itself or supporting its claim to likely success on the merits, and *ipso facto* has failed to overcome the evidence of harm to the defendant.

On the record before the Court, the defendant has explained both the very real harms and the potential for extremely serious harms that would ensue were the Court to issue a stay of its judgment.  Additionally, these factors advanced by the defendant do not account for the harm to the awardee, whose interests are not represented before the Court.

The Court finds that the effect of a stay on the defendant would be significant; that impact is balanced against the lack of irreparable harm to the plaintiff.  In tandem, these factors compel the denial of the motion.

### D.    Public Interest

The final factor to consider is the public interest.  In evaluating the factors of the test for an injunction, which forms the basis for the test for a stay pending appeal, a court "should pay particular regard to the public consequences" of an injunction.  *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982).

With respect to this factor, Obsidian argues that the public interest supports the entry of a stay.  Obsidian makes a generic argument of the public interest in the honest, open, and lawful

award of public contracts.  This court has held that "the public interest in honest, open, and fair competition in the procurement process is compromised when an agency abuses its discretion in evaluating a contractor's bid."  *Overstreet Elec. Co. v. United States*, 47 Fed. Cl. 728, 744 (2000); *accord Bona Fide Conglomerate, Inc. v. United States*, 96 Fed. Cl. 233, 242 (2010).

On the other hand, "there is a countervailing public interest in minimizing disruption" to an agency.  *Heritage of Am., LLC v. United States*, 77 Fed. Cl. 66, 78, *reconsideration denied*, 77 Fed. Cl. 81 (2007); *accord Aero Corp. S.A. v. United States*, 38 Fed. Cl. 237, 242 (1997).  In the absence of any especially decisive factor in this case, these two countervailing principles balance each other out and do not support Obsidian's motion for a stay.

Obsidian also argues that the procurement system is designed to support small businesses and enable them to compete for and win contracts. (ECF 31 at 7.)  While Obsidian's arguments are accurate in general, they do not meaningfully address the application of the public interest factor to this case.  Obsidian implies that the public interest supports a stay because Obsidian would secure the contract after it prevails on its appeal.  Obsidian's argument along these lines is dependent on its likelihood of success on the merits, and the Court has already found that unlikely.

In addition, its argument based on the interests of small businesses is misplaced.  The prevailing bidder that replaced Obsidian is itself a small business, as it had to be under the terms of the solicitation.  An argument predicated on the procurement system supporting the development and growth of small businesses proves nothing in this case.  If anything, as the application of the three-year average of receipts showed in the case, Obsidian has already succeeded and outgrown the small-business label, at least with respect to some NAICS Codes.

The Court has already canvassed the potential effects of a stay on the defendant.  Suffice it to reiterate here that the litany of potential harms to the national security interests outlined by Ms. DiSomma, the DOE official, in her declaration (ECF 37-1) also carries significant weight in the Court's evaluation of the public interest under 28 U.S.C. § 1491(b)(3).

The public interest in a stay is also limited by the particular facts of this case.  As the Court noted in its underlying opinion, on June 24, 2019, the SBA proposed its own new rule to reflect the five-year averaging required of other agencies under the REA.  84 Fed. Reg. at 29,399.  After receiving comments, the SBA promulgated its new final rule adopting five-year averaging of receipts to calculate the size of a business.  84 Fed. Reg. at 66,561.  The new rule took effect on January 6, 2020; it was made applicable only after that effective date.  The five-year averaging of receipts allows for a greater number of businesses to be classified as "small."  It is undisputed that Obsidian would have been eligible for the procurement had a five-year average been employed; the new rule eliminates, going forward, the very harm Obsidian experienced, and serves the same public interest Obsidian seeks to protect.

The immediate practical effect of the Court's decision is limited, applicable only to the present case.  Therefore, the public interest in the issuance of a stay is minimal.  The SBA's new rule is in effect, and its old rule is inapplicable to any current dispute.  Obsidian's claim involves an issue that is not current and is not likely to be repeated.  As a result, there is no strong public

interest favoring a stay, because no other putative small business is likely to be currently adversely affected. Obsidian and BTAS appear to have been the only adversely affected firms that sued in this court. The public interest analysis would be different if there were or were likely to be other pending cases raising the issue; there are none. Because no other firm has an interest in the issue, the public has no interest in whether a stay is granted. The outcome of this case will apply only to Obsidian and the single procurement at issue.

Given these various factors, the Court finds that the public interest does not support the issuance of a stay of the Court's judgment pending appeal.

## V.    CONCLUSION

Obsidian has failed to show it is likely to succeed on the merits. Obsidian has also crucially failed to supply any facts from which the Court may conclude it will suffer an irreparable injury in the absence of a stay pending appeal. Even if Obsidian had presented admissible evidence regarding its alleged injuries, the Court would find those injuries do not show irreparable harm. In addition, the Court finds the effect of a stay would burden the DOE, and the public interest does not support a stay. The Court finds that Obsidian has failed to meet its burden on each element of the relevant test.

Accordingly, the motion for a stay pending appeal is **DENIED**. The Court will, however, **STAY** the effect of its judgment until **April 30, 2021**, so that Obsidian may seek a stay from the Court of Appeals under FRAP 8. This stay shall have no effect on the DOE's ongoing transition activities to the new contractor. In the event Obsidian's motion for a stay is denied by the Court of Appeals, this limited stay will terminate automatically.

It is so **ORDERED**.

s/ Richard A. Hertling

**Richard A. Hertling**
**Judge**